1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9                 DISTRICT OF NEVADA
10                        * * *
11   UNITED STATES OF AMERICA,        )
                                      )     Case No. 2:15-cr-00041-GMN-NJK
12              Plaintiff,            )
                                      )
13   vs.                              )     REPORT &  RECOMMENDATION
                                      )
14   MICAH IVERSON KELLY,             )
                                      )     (Docket No. 65)
15              Defendant.            )
     _____)
16

17          This matter was referred to the undersigned Magistrate Judge on Defendant's Motion to

18   Dismiss Indictment.  Docket No. 65.  The Court has considered  Defendant's motion, the United

19   States' response, Defendant's reply, the United States' surreply, and Defendant's final reply.  Docket

20   Nos. 65, 73, 78, 81, 82.

21   **I.      BACKGROUND**

22          In 1970, Congress enacted the Controlled Substance Act ("CSA"), 84 Stat. 1242, as

23   amended, 21 U.S.C. §§ 801 *et seq*, which places restrictions on the possession and distribution of

24   various substances found to pose a danger to the health and general welfare of the nation.  *Touby v.*

25   *United States*, 560 U.S. 160, 162 (1991).  The CSA "establishes five categories or 'schedules' of

26   controlled substances, the manufacture, possession, and distribution of which the [CSA] regulates

27   or prohibits."  *Id*.  Schedule I substances are those that are believed to pose the most serious threat

28   to public safety and, therefore, carry the most severe penalties when they are involved in violations.

     *Id*.  Section 201(a) of the CSA authorizes the Attorney General to add or remove substances, or to

1    move a substance from one schedule to another.  21 U.S.C. § 811(a).

2          When permanently adding a substance to a schedule, the Attorney General must follow

3    specified procedures, which will generally take approximately six to twelve months from the time

4    law enforcement officials identify a dangerous new substance.[1]  *Touby*, 550 U.S. at 162-163

5    (omitting internal quotes).  In the past, "[d]rug traffickers were able to take advantage of this time

6    gap by designing drugs that were similar in pharmacological effect to scheduled substances but

7    differed slightly in chemical composition, so that existing schedules did not apply to them. These

8    'designer drugs' were developed and widely marketed long before the Government was able to

9    schedule them and initiate prosecutions. *Id*. at 163.

10          In an effort to address this issue, Congress amended the CSA in 1984 to create an expedited

11   procedure by which the Attorney General can schedule a substance on a temporary basis so long as

12   there was an "imminent hazard to the public safety." 21 U.S.C. § 811(h).  To temporarily schedule

13   a drug under section 811(h), the Attorney General must consider only three of the eight factors

14   required for permanent scheduling. 21 U.S.C. § 811(h)(3).  Specifically, the Attorney General "must

15   consider the substance's 'history and current pattern of abuse,' the 'scope, duration, and significance

16   of abuse,' and the 'risk [...] to the public health.'" *United States v. Anderson*, 2014 WL 2742810,

17   *2 (D.Nev. June 16, 2014) (citing 21 U.S.C. § 811(c)(4)-(6)).  The Attorney General should also

18   consider actual abuse, diversion from legitimate channels, and clandestine importation, manufacture,

19   or distribution.  21 U.S.C. § 811(h)(3).  Then, the Attorney General must provide a 30-day notice

20   of the proposed scheduling in the Federal Register. 21 U.S.C. § 811(h)(1).[2]  After the thirty days

21   _____

22          [1]The Attorney General must first request a scientific and medical evaluation from the
     Secretary of Health and Human Services, along with a recommendation as to whether the substance
23   should be controlled (if the Secretary recommends against it, a substance cannot be scheduled).  21
     U.S.C. § 811(b).  The Attorney General must then consider eight factors with respect to the
24   substance, including its potential for abuse, scientific evidence of its pharmacological effect, its
     psychic or physiological dependence liability, and whether the substance is an immediate precursor
25   of a substance already controlled. 21 U.S.C. § 811(c). Next, the Attorney General must comply with
     the notice-and-hearing provisions of the Administrative Procedure Act, 5 U.S.C. §§ 551-559, which
26   permit comment by interested parties. 21 U.S.C. § 811(a).  Further, the CSA permits any aggrieved
     person to challenge the scheduling of a substance by the Attorney General in a court of appeals.  21
27   U.S.C. § 877.

28          [2]Notice also must be transmitted to the Secretary of Health and Human Services ("HHS"),
     but the Secretary's prior approval of a proposed scheduling order is not required.  *See* 21 U.S.C. §

1  have elapsed, the substance becomes a Schedule I controlled substance for two years, although the

2  Attorney General may, during the pendency of proceedings to permanently schedule the substance,

3  extend the temporary scheduling for a period of up to one year.  21 U.S.C. § 811(h)(2).  An order to

4  temporarily schedule a substance "is not subject to judicial review," 21 U.S.C. § 811(h)(6), except

5  by a defendant charged with a criminal act involving a substance that has been temporarily

6  scheduled.  *Touby*, 500 U.S. at 168.

7      The Attorney General has promulgated regulations delegating to the DEA his powers under

8  the CSA, including the power to schedule controlled substances on a temporary basis.[3]  *See* 28 CFR

9  § 0.100(b) (1990).  Pursuant to that delegation, on November 7, 2013, the DEA Administrator sent

10  a letter notifying the Secretary of HHS of his intention to publish an order in the Federal Register

11  temporarily scheduling ten synthetic cathinone substances.  Docket No. 65-1 at 1-2.  One of those

12  substances was butylone.  *Id*. at 1.  On January 28, 2014, the DEA published in the Federal Register

13  a notice of intent to temporarily schedule the same ten synthetic cathinone substances, including

14  butylone.  *Id*. at 5-12.  Specifically, the notice stated the DEA's intent to temporarily schedule

15  "butylone, its optical, positional[4], and geometric isomers, salts and salts of isomers..." *Id*. at 11.  The

16  notice discussed the history and current pattern of abuse, the scope, duration and significance of

17  abuse, and the risk to public health caused by the substances, as required by 21 U.S.C. § 811(h)(3).

18  *Id.* at 7-9.

19      On March 7, 2014, the DEA published in the Federal Register its final order temporarily

20  scheduling these substances.  *Id*. at 14-22.  The final order listed "[b]utylone, its optical, positional,

21  and geometric isomers, salts and salts of isomers" among the temporarily scheduled substances.  *Id*.

22  at 22.  Further, like the notice of intent, the final order considered the history and current pattern of

811(h)(4).

[3]Both Congress' power to delegate legislative power to the Attorney General and the Attorney General's power to delegate his temporary scheduling power to the DEA have been upheld as constitutional delegations.  *See Touby*, 500 U.S. at 169.  Defendant does not challenge these delegations in the instant motion.  *See* Docket No. 65.

[4]On December 7, 2007, the DEA published in the Federal Register a specific definition of positional isomer for use in determining which isomers of Schedule I substances would be subject to Schedule I control.  *Id*. at 24-26.

abuse, the scope, duration and significance of abuse, and the risk to public health caused by the substances, as required by 21 U.S.C. § 811(h)(3). *Id.* at 16-19.

On February 24, 2015, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant Micah Kelly with two counts of Distribution of a Controlled Substance - Ethylone, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and one count of Possession of a Controlled Substance with Intent to Distribute - Ethylone, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C). Docket No. 10. Defendant now seeks a dismissal of the indictment, with prejudice. Docket No. 65.

In support of his request, Defendant submits that the Drug Enforcement Agency ("DEA") failed to follow the procedure set forth in 21 U.S.C. § 811(h) to temporarily schedule ethylone. Docket No. 65 at 2-3, 5-6. Defendant contends that, when the DEA attempted to temporarily schedule ethylone, it did so with ten specifically named substances (and ethylone was not one of the named substances), "plus all of each substance's optical, positional, and geometric isomers, salts, and salts of isomers." *Id.* at 3. Defendant submits that the DEA failed in three separate ways. "First, the DEA neither considered nor made any findings with regard to the statutory factors required to permit ethylone's scheduling. Second, the DEA did not provide notice of its intent to schedule ethylone" to the Department of Health and Human Services, "naming only the ten substances, but not naming ethylone or any other isomers. Third, the DEA's notice and order in the Federal Register were insufficient to schedule ethylone, as they made none of the required findings as to ethylone." *Id.* at 6, 8-20. Defendant submits that ethylone is an isomer of butylone, but that ethylone is not butylone and, therefore, ethylone has not been scheduled. *Id.* at 6-8.

Additionally, Defendant submits that the DEA acted in an arbitrary and capricious manner in its attempt to schedule ethylone, because Congress unsuccessfully attempted to pass legislation permanently scheduling ethylone between 2011 and 2013 and the DEA therefore attempted to bypass the law by temporarily scheduling ethylone as one of butylone's isomers. *Id*. at 3, 21-23. As a result, Defendant submits that ethylone is not a controlled substance and, thus, he cannot be guilty of the crimes charged in the indictment. *Id.* at 3. Therefore, Defendant asks the Court to dismiss the indictment against him with prejudice. *Id*. at 3, 23.

In response, the United States responds that "a substance's salts, isomers, and salts of isomers are categorically controlled under Schedule I, unless specifically excepted, and do not require their own separate factor analysis."[5]  Docket No. 73 at 2, 4-9.  The United States submits that the DEA did not except any of butylone's isomers when it temporarily scheduled it; to the contrary, the DEA explicitly included butylone's optical, geometric, and positional isomers, as well as its salts and salts of isomers, in its notice of intent and final temporary scheduling order. *Id.* at 2.  Further, the United States contends that the DEA followed the procedure required by statute, and that the statute clearly controls the isomers of Schedule I controlled substances. *Id*. at 2-3.  The United States contends that Defendant's motion is a challenge to the DEA's statutory interpretation of its scheduling authority, and argues that Congress' intent was clear, and the DEA's interpretation of the statute at issue is based on a permissible construction of that statute. *Id*. at 3.  The United States further contends that the Court should apply *Chevron USA, Inc. V. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), in determining whether DEA's statutory interpretation of its scheduling authority is permissible, and that Defendant incorrectly framed the issue as to whether the DEA acted in an arbitrary and capricious manner.  Docket No. 73 at 3-4, 18-20.  The United States therefore asks the Court to deny Defendant's motion to dismiss the indictment. *Id.* at 20.

In reply, Defendant argues that *Chevron* does not apply to federal criminal law and, therefore, does not apply in the instant case.  Docket No. 78 at 2, 4-5.  Even if *Chevron* does apply, however, Defendant argues that the statute at issue is ambiguous as to which isomers of temporarily scheduled drugs are themselves scheduled. *Id.* at 2, 5-9.  Defendant submits that, as the United States contends that ethylone is a positional isomer of butylone, it is only subject to Schedule I controls if butylone is scheduled in Schedule I(c). *Id*.  Defendant submits that the United States' position that all isomers of butylone are categorically scheduled is incorrect, and that the Rule of Lenity requires the Court to resolve the ambiguities of the CSA in his favor. *Id*. at 3, 9.  Further, Defendant submits that Congress never intended the DEA to schedule "unknown, un-vetted substances by simply adding

---

[5]The parties agree that ethylone is an isomer of butylone.  Docket No. 65 at 3; Docket No. 73 at 2.  The United States submits that, more specifically, ethylone is a positional isomer of butylone and butylone is a positional isomer of ethylone.  Docket No. 73 at 2, n. 1.

1   'and isomers' to its temporary scheduling orders." *Id*. at 10-13.  Finally, Defendant contends that

2   the DEA's procedures did not provide fair warning that ethylone is a controlled substance.  *Id*. at 3,

3   13-15.  As a result, Defendant asks the Court to dismiss his indictment with prejudice, as it fails to

4   allege a crime.  *Id*. at 15-17.

5          After Defendant filed his reply, the parties filed a stipulation with the Court in which they

6   represented that the United States wanted to address and clarify some points that Defendant had

7   raised in his reply.  Docket No. 79 at 1.  As counsel for the United States needed to consult with the

8   DEA and was sechduled to begin a jury trial, the parties asked for a little over two weeks for the

9   United States to file a sur-reply.  *Id*. at 1-2.  The parties further asked that Defendant have a week

10  to file a reply to the United States' sur-reply.  *Id*. at 2.  The Court allowed the parties the requested

11  amount of time to file the requested documents.  Docket No. 80 at 3.

12         In sur-reply, the United States submits that Defendant raised two new arguments in his reply:

13  "(1) the [CSA] is ambiguous; and (2) DEA did not specify which schedule I subcategory butylone

14  belonged to."  Docket No. 81 at 1.  The United States submits that the "DEA clearly, and in

15  compliance with the statutory procedures required by Title 21, Secion 811(h) temporarily scheduled

16  butylone, along with its optical geometric, and positional isomers."  *Id*. at 2.  The United States

17  contends that the "notice of intent to schedule and the final order temporarily scheduling butylone,

18  along with its optical, geometric, and positional isomers, in conjunction with the CFR definition of

19  positional isomer, is the legal basis."  *Id*.  Futher, the United States says it will provide expert

20  testimony to prove that ethylone is a positional isomer of butylone and is therefore a controlled

21  substance.  *Id*.  Therefore, the United States contends, the indictment properly alleges a crime.  *Id*.

22         Additionally, the United States submits that Defendant's contention that Section 811(h)'s

23  silence on subcategories is ambiguous is flawed.  *Id*. at 3.  The United States notes that Defendant

24  is charged with violating criminal statutes, and not Section 811(h), and the criminalization of

25  distributing a Schedule I controlled substance is not ambiguous.  *Id*.  Further, the United States

26  submits that the final temporary scheduling order, which explicitly includes positional isomers of

27  butylone, serves to provide the public with notice.  *Id*.  Finally, the United States notes that the

28  statute does not require notice of subcategorization within Schedule I.  *Id*.

1    The United States contends that *Chevron* applies because 811(h) is an enabling statute, and

2    not a criminal statute. *Id*. at 3-5. The United States further submits that the Rule of Lenity does not

3    trump *Chevron* deference, and notes that Defendant failed to provide any authority to support his

4    contention to the contrary. *Id*. at 5, n. 5. The United States contends that Congress enacted the

5    temporary scheduling authority "to protect the public in direct response to the designer drug crisis."

6    *Id*. at 6. Congress, therefore, "intentionally prioritzed the need to protect the public safety." *Id*.

7    Further, Congress "understood that 'isomers of dangerous drugs often elicit similar harmful

8    pharmacological effects, and that clandestine manufacturers attempt to circumvent the law by

9    manufacturing positional and geometric isomers of hallucinogens.'" *Id*. (internal citation omitted).

10   Congress therefore "codified a definition of isomer 'to assure that those isomers requiring control

11   under the CSA are covered by the statute.'" *Id*. (internal citation omitted). The United States submits

12   that, under this framework, the "DEA's interpretation of Section 811(h) as including a substance's

13   isomers, effectuates Congress' intent to protect the public safety and control the isomers covered by

14   schedule I of the CSA." *Id*. Finally, the United States contends that Defendant's reliance on recent

15   Congressional inaction in relation to the scheduling of ethylone and butylone is misplaced, as the

16   parties can only speculate as to the reason for the inaction. *Id*. at 7-9. In any event, the United States

17   submits that Congress' action or lack thereof in regard to scheduling specific substances "has no

18   bearing on the issue of whether a previous Congress intended to control specific isomers of schedule

19   I substances." *Id*. at 7-8. Finally, the United States directs the Court's attention to the Report and

20   Recommendation ("R&R") on two cases involving issues regarding ethylone scheduling written by

21   a Magistrate Judge in Alaska. *See* Docket No. 81-1 (*United States v. Riley-Jennings*, Docket No.

22   59, 15-cr-0040-SLG-DMS; *United States v. West, III, et al.*, Docket No. 89,14-cr-118-TMB-DMS).

23   In his final reply, Defendant denies the suggestion that he introduced new arguments in his

24   reply brief. Docket No. 82 at 2. Defendant contends that ethylone is not a controlled substance

25   because the DEA did not schedule it, and because the CSA is ambiguous about isomers. *Id*. As

26   ethylone is not a controlled substance, Defendant submits, the indictment fails to establish an

27   essential element of the crime charged and, therefore, must be dismissed. *Id*. at 2-3. Further,

28   Defendant contends that the United States has "flip-flopped" its position regarding how the Court

must read the CSA, and that *Chevron* is not appropriate for interpreting criminal statutes. *Id*. at 4-7, 9-10. Additionally, Defendant states that the Court must apply the Rule of Lenity in interpreting the statute. *Id*. at 7-8.

Finally, Defendant asks the Court to disregard the Alaska R&R submitted by the United States. *Id*. at 12. Defendant states that the Alaska R&R is premised on an entirely different legal and procedural posture as the Alaska Court determined that the question of whether butylone and ethylone are in fact positional isomers is ultimately a jury question; while in this case, Chief United States District Judge Gloria M. Navarro determined that it is a legal question. *Id*. Second, Defendant contends that he has not raised a constitutional challenge to the DEA's definition of positional isomer, and has instead questioned the DEA's failure to follow the proper procedure to temporarily schedule ethylone. *Id*. Third, Defendant points out that he has requested a hearing on this motion and is prepared to present expert testimony; therefore, the expert testimony presented in the Alaska cases is extraneous and possibly prejudicial. *Id*. at 12-13. Finally, Defendant states that the R&R has no precedential authority. *Id*. at 13.

## II.   **ANALYSIS**

Federal Rule of Criminal Procedure 12(b)(2) provides that "a party may raise by pertrial motion any defense, objection, or request that the court can determine without a trial of the general issue." A pre-trial motion to dismiss an indictment cannot be brought to challenge the merits of the case, and cannot be used as a device for a summary trial of the evidence. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)

In determining a motion to dismiss an indictment, "a court is limited to the face of the indictment and must accept the facts alleged in that indictment as true." *United States v. Ruiz-Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000) (*citing Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954), *cert. denied*, 349 U.S. 922 (1955)). *See also United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment"). "[T]he court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged. The indictment either states an offense or it does not. There is no reason to conduct

1  an evidentiary hearing." *Id*.  *See also United States v. Sampson*, 371 U.S. 75, 78-79(1962) ("Of

2  course, none of these charges have been established by evidence, but at this stage of the proceedings

3  the indictment must be tested by its sufficiency to charge an offense").  The "unavailability of Rule

4  12 in determination of general issues of guilt or innocence ... helps ensure that the respective

5  provinces of the judge and jury are respected...." *United States v. Nukida*, 8 F.3d 665, 670 (9th Cir.

6  1993).

7         Defendant requests an evidentiary hearing to present expert evidence.   However, an

8  evidentiary hearing is inappropriate at this time.  The question of whether ethylone is an isomer of

9  butylone - specifically, a positional isomer - is a question for the jury.  *See, e.g., United States v.*

10  *Johnson*, 2014 WL 7330935, *5 (D.Nev. July 31, 2014); *United States v. Long*, 2014 WL 1661497,

11  *2 (D.S.D. April 25, 2014) ("a district court errs procedurally when it takes up a sufficiency of the

12  evidence challenge prior to trial"); *United States v. Reece*, 2013 WL 5234227, at *4 (W.D.La. Sept.

13  13, 2013) ("Whether AM-2201 actually is a controlled substance analogue is a question of fact that

14  must be assumed as true for purposes of this motion and left to the jury to determine at trial on the

15  merits").

16         In any event, both parties agree - at least for the purpose of this motion - that ethylone is an

17  isomer of butylone.  *See* Docket No. 65 at 7 ("Ethylone is an isomer of butylone"); Docket No. 73

18  at 2 ("As the defendant admitted in his motion, ethylone is an isomer of butylone").  Therefore, an

19  evidentiary hearing on whether ethylone is an isomer of butylone would be frivolous.  Accordingly,

20  the Court denies Defendant's request for an evidentiary hearing.

21         Defendant submits that the Court may not apply *Chevron* in determining whether the DEA's

22  interpretation of the CSA was reasonable because the statute implicated is a criminal statute.  The

23  United States contends, to the contrary, that the statute implicated is an enabling statute.  Courts have

24  generally applied *Chevron* deference to an executive agency's interpretation of a law that

25  contemplates both criminal and administrative enforcement.  *See Babbitt v. Sweet Home Chapter,*

26  *Communities for Great Ore.*, 515 U.S. 687 (1995) (deferring to agency's interpretation of law that

27  carried criminal penalties).  *See also United States v. Royer*, 549 F.3d 886, 899 (2d Cir. 2008);

28  *United States v. Flores*, 404 F.3d 320, 326-327 (5th Cir. 2005); *Hemp Industries Ass'n v. Drug*

1    *Enforcement Admin*., 357 F.3d 1012, 1015 (9th Cir. 2004); *United States v. Atandi*, 376 F.3d 1186,

2    1189 (10th Cir. 2004); *In re Sealed Case*, 223 F.3d 775, 779 (D.C. Cir. 2000); *United States v.*

3    *Kanchanalak*, 192 F.3d 1037, 1047 (D.C. Cir. 1999).  The Court therefore applies *Chevron*.

4           "When a court reviews an agency's construction of the statute which it administers, it is

5    confronted with two questions."  *Chevron*, 467 U.S. at 842.  First, applying the ordinary tools of

6    statutory construction, the court must determine "whether Congress has directly spoken to the precise

7    question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well

8    as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id*. at 842–843.

9    However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the

10   court is whether the agency's answer is based on a permissible construction of the statute."  *Id*. at

11   843.  *See also Hemp Industries Ass'n.*, 357 F.3d at 1015.

12          *Chevron* "is rooted in a background presumption of congressional intent: namely, 'that

13   Congress, when it left ambiguity in a statute' administered by an agency, 'understood that the

14   ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than

15   the courts) to possess whatever degree of discretion the ambiguity allows.'"  *City of Arlington, Tex.*

16   *V. F.C.C.*, _____ U.S. _____, 133 S.Ct. 1863, 1868 (2013) (citing *Smiley v. Citibank (South Dakota),*

17   *N. A.*, 517 U.S. 735, 740–741 (1996)).  *Chevron* "thus provides a stable background rule against

18   which Congress can legislate: Statutory ambiguities will be resolved, within the bounds of

19   reasonable interpretation, not by the courts but by the administering agency."  *City of Arlington, Tex.*,

20   133 S.Ct. At 1868.  "Congress knows to speak in plain terms when it wishes to circumscribe, and

21   in capacious terms when it wishes to enlarge, agency discretion."  *Id*.  Therefore, an agency's

22   properly promulgated regulation is entitled to great deference and courts must give considerable

23   weight to an agency's construction of a statute that it has been aassigned to enforce.  *Chevron*, 467

24   U.S. at 844.

25          In the instant case, the Court finds that the intent of Congress is clear.  The CSA clearly

26   includes isomers.  21 U.S.C. § 802(14) defines the term isomer.  In its definition, it states that, "[a]s

27   used in schedule I(c), the term 'isomer' means any optical, positional, or geometric isomer."  21

28   U.S.C. §802(14).  Further, the CSA clearly states that, for Schedule I(c) drugs,

> Unless specifically exempted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation[.]

21 U.S.C. 812, Schedule I(c).  Therefore, the Court finds that Congress clearly intended to include isomers, unless specifically exempted or listed in another schedule, when scheduling substances. As the Court finds that the intent of Congress is clear and that the DEA exercised its properly delegated authority in defining positional isomer and issuing the scheduling order at issue, the Court's inquiry ends.  *Chevron*, 467 U.S. at 842-843.  Therefore, the Court gives deference to the DEA's statutory interpretation of the CSA, and finds that ethylone was properly temporarily scheduled.[6]

The Court further finds that the rule of lenity does not apply.  "We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement."  *Babbitt*, 515 U.S. at 704, n. 18.  *See also Staples v. United States*, 511 U.S. 619 n. 17 (1994) (rule of lenity requires that "ambiguous criminal statute[s] ... be construed in favor of the accused").

Finally, Defendant argues that the DEA acted in an arbitrary and capricious manner in temporarily scheduling ethylone.  Courts "may not set aside agency action unless that action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1244 (9th Cir. 2013) (internal citation omitted).  This standard is met only where the party challenging the agency's decision meets the "heavy burden" of showing that "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The Court finds that Defendant has failed to meet that burden here.

---

[6]The Court declines to speculate as to why Congress did not enact prior bills that included language scheduling ethylone.

1    **III.    <u>CONCLUSION</u>**

2            Accordingly,

3            Based on the foregoing and good cause appearing therefore,

4            IT IS RECOMMENDED that Defendant's Motion to Dismiss Indictment (Docket No. 65)

5    be **DENIED**.

6                                                      <u>NOTICE</u>

7            Pursuant to Local Rule IB 3-2 <u>**any objection to this Report and Recommendation must**</u>

8    <u>**be in writing and filed with the Clerk of the Court within 14 days of service of this document.**</u>

9    The Supreme Court has held that the courts of appeal may determine that an appeal has been waived

10   due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142

11   (1985).  This Circuit has also held that (1) failure to file objections within the specified time and (2)

12   failure to properly address and brief the objectionable issues waives the right to appeal the District

13   Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951

14   F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.

15   1983).

16           DATED this 15th day of April, 2016.

17

18

19                                          _____

20                                          NANCY J. KOPPE
                                            United States Magistrate Judge

21

22

23

24

25

26

27

28